E-FILED
Tuesday, 01 November, 2005 02:11:19 PM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT

SANGAMON COUNTY, ILLINOIS

PEOPLE OF THE                )
STATE OF ILLINOIS,           )
                             )
          Plaintiff,         )
                             )    CRIMINAL DIVISION
     vs.                     )
                             )     NOS. 2004-CF-648 and
                             )     2005-CF-1143
SCOTT GLISSON,               )
                             )
          Defendant.         )

MOTIONS

REPORT OF THE PROCEEDINGS of the hearing held

before the Honorable ROBERT J. EGGERS, on the 9th day of

September, 2005.

     APPEARANCES:

          HONORABLE JOHN SCHMIDT,
              State's Attorney of Sangamon County by,
          MR. DUANE GAB,
              Assistant State's Attorney
              for the People of the State of Illinois.

          MS. PATRICIA HAYES,
              Attorney at Law
              on behalf of the Defendant.

Andrea S. Pryor, CSR
Official Court Reporter
Room 732 - Sangamon County Complex
Springfield, IL  62701
(217) 753-6390
Lic. No. 084-002387

1

I N D E X

WITNESSES                                          PAGE

None




EXHIBITS                    ADMITTED

None

1          THE COURT:  This is 04-CF-648, People v. Scott

2    Glisson, and we are here on various motions.  The motion

3    most important to the Court for this hearing is the

4    Motion to Revoke Mittimus, but we are also here on an

5    Amended Petition to Revoke and Forfeit Bond and an

6    Amended Petition to Revoke Probation in this matter.

7          MS. HAYES:  Your Honor, I filed four motions this

8    morning.

9          THE COURT:  Well, I'm just getting to that.

10    Anyway, Duane Gab is here for the State.  And Mr.

11    Glisson is present, and Patty Hayes entered her

12    appearance in this case.  Was that yesterday?

13          MS. HAYES:  Wednesday.

14          THE COURT:  Wednesday.  Before we go any further

15    with this proceeding, I -- I have serious reservations

16    whether Miss Hayes has any ability under our Canon's of

17    Ethics to represent the Defendant on this proceeding

18    inasmuch as she was the alleged victim, as I understand

19    it, on the underlying charges of Deceptive Practices.

20          MR. GAB:  Judge, may I address the Court just

21    briefly before you get into that?  In regards to this

22    issue, I'd also ask the Court to take judicial notice of

23    several files that I pulled.  These are the cases that

24    actually involve Mr. Glisson and Miss Hayes.  There was

1    an 04-CM-1376, which is a Violation of Protective Order,

2    Theft and Possession of Drug Paraphernalia.  I would

3    note for the Court that the victim in this case was Miss

4    Hayes.  I do believe charges were dropped at some point

5    in time.  However, she was the victim in that case.

6            I also would offer to the Court 04-OP-500,

7    04-OP-697, 04-OP-491 and 04-OP-676.  All of these are

8    Orders of Protection where the Petitioner is Patty Hayes

9    and the Respondent is Scott Glisson.

10           Judge, in a brief review of those files, I

11   believe that they all have been dropped at some point in

12   time.  However, I think it raises additional issues with

13   regard to the ability for Miss Hayes to represent Mr.

14   Glisson in this case.

15           I could not find any case law directly on

16   point regarding these kinds of per se conflicts.  I

17   would offer to the Court People v. Munson.  It just

18   talks about it per se, a per se conflict in general

19   terms.  Judge, based on all of these issues, I don't see

20   this as a waivable conflict, and the State would object

21   to Miss Hayes' representation of Mr. Glisson at this

22   time.

23           THE COURT:  Mr. Hayes -- or Miss Hayes, do you have

24   any authority that would permit you to enter your

                                4

1    appearance in this matter where, as I understand it, you

2    were the victim?

3        MS. HAYES:  Your Honor, I was not the victim in the

4    underlying action.  It was the bank that was the victim.

5    I did not pursue charges unless the bank did.  And I do

6    not have any authority because I didn't know this was

7    going to be an issue until just now.  I don't believe

8    that I have a conflict of interest in this matter.  I'm

9    not a victim in any of the allegations related to the

10   Petition to Revoke or the pending petitions pending

11   against Mr. Glisson, and I believe he wants me to

12   represent him.  I believe he has a right to waive any

13   potential conflicts.

14       MR. GAB:  Judge, just so the Court knows, the

15   charge that Mr. Glisson pled guilty, it was a Forgery

16   charge, and this is a copy of the original complaint.

17       MS. HAYES:  Your Honor, if I may be heard, I do

18   plan to get co-counsel to represent Mr. Glisson.  I've

19   contacted Michael Costello, and I believe he's going to

20   agree to represent Mr. Glisson as co-counsel.  That

21   would alleviate any of the Court's concerns.

22       THE COURT:  So are you asking that the matter be

23   continued, Miss Hayes, if Mr. Costello is going to be

24   entering his appearance?

1    MS. HAYES:  He's going to be entering as co-counsel

2    with me, yes, and we were going to ask that the matter

3    be continued because I've not been able to consult with

4    Mr. Costello on various motions that were filed today.

5        THE COURT:  Is that what you wish to do, as well,

6    Mr. Glisson?

7        THE DEFENDANT:  Yes, Your Honor.

8        THE COURT:  Is Tuesday -- are any of you available

9    Tuesday?

10        MR. GAB:  What are we going to be hearing on

11    Tuesday, Your Honor?  Is it --

12        THE COURT:  Well, we have got matters here to

13    revoke the mittimus -- the stay on the mittimus.  That's

14    the matter that concerns the Court the greatest.

15        MR. GAB:  And if I agree with that, Your Honor.  I

16    guess my question is there was also several motions

17    filed which I only had for the last nine minutes, one of

18    them a Motion for Mental Examination, and I don't know

19    based on that motion, depending on the Court's ruling,

20    whether or not we would be able to proceed.  I have

21    three officers that are subpoenaed as a result of that.

22    I have to subpoena them next for Tuesday, and if we

23    don't have a hearing again and I have to keep bringing

24    them back, I certainly will.  And I'll --

6

1    THE COURT:  Well, if we are going to go ahead with

2    a mental exam, we wouldn't be able to conduct any other

3    kind of hearing on Tuesday.

4    MR. GAB:  That's correct, Your Honor.  I don't know

5    what my position is going to be in regards to the mental

6    examination because I just got the motion, and I'm not

7    well conversant with, you know, what the law is and what

8    the standards are and what I would like to do at this

9    point in time.  So are we just going to have a hearing

10    on the Motion for Mental Examination?

11    THE COURT:  I haven't -- I don't know what motions

12    were filed.

13    MR. GAB:  Judge, I notice Miss Hayes said four, and

14    I only have three.  These were the three I was handed.

15    MS. HAYES:  Your Honor, here's four motions that I

16    filed today.

17    THE COURT:  Well, you filed those in the new felony

18    case.

19    MS. HAYES:  In the new felony case, yes.  There's

20    two motions that were filed in the new --

21    THE COURT:  Give those back to her.  Those are in

22    the new felony case.  We are here on the old felony

23    case.

24    MS. HAYES:  Right, I filed a Motion to Dismiss and

7

1    Strike their Petition to Revoke in that, and I also

2    filed a Motion to Allow Mr. Glisson to Continue his

3    Studies while he's being incarcerated in that case.

4        THE COURT:  Well, if you're filing a Petition for a

5    Mental Exam, I don't know that I'm going to proceed

6    further with any of these matters.  You don't --  the

7    State doesn't have a position?

8        MR. GAB:  On the mental examination, Judge, no.  I

9    could have a position on Monday or Tuesday very easily,

10   but at this point in time, I am somewhat hesitant to

11   take a position as I'm unable to respond on the Motion

12   to Dismiss the Amended Petition.  I would note that on

13   the Motion to Dismiss the Court doesn't have

14   jurisdiction.  My recollection of the event on

15   8/24/2005, as are reflected in the docket entry, his

16   probation was continued until his jail sentence was

17   over.

18       THE COURT:  You gave me this Forgery complaint.

19       MR. GAB:  Yes, Your Honor.  Judge, if I can make a

20   recommendation?  If that matter maybe could be set for

21   Tuesday for attorney status or pretrial, a status

22   conference, regarding all of these matters, and then,

23   you know, depending on what attorney shows up to

24   represent Mr. Glisson and after I've had a chance to

1    review and respond to all of the positions, we would

2    have a much better idea of what we are intending to do.

3    The officers that are here today did, you know, show up

4    on two days' notice.  Is everybody in town next week?

5    They have all indicated that they are in town.

6          THE COURT:  Well, I don't think you can have it

7    both ways.  You can't force the other side to hearing if

8    you're claiming your client is unfit.  We couldn't

9    proceed to any kind of evidentiary hearing with an unfit

10    party.

11          MS. HAYES:  That's correct, Your Honor.

12          THE COURT:  So you're in agreement.  Well, this is

13    what I'll do then.  I will enter an order allowing your

14    request for a mental exam in both cases, both the new

15    felony case, the '05 case.  What's the number of that

16    one?  Is that this one?  That's 05-CF-1143, and I will

17    also enter that order in 04-CF-648.  Who are you

18    suggesting that be employed to do this independent exam?

19          MS. HAYES:  Dr. Bohlen.

20          THE COURT:  And who do you have in mind?

21          MR. GAB:  Judge --

22          THE COURT:  What's your -- what contact, if any,

23    has the Defendant had with Dr. Bohlen before this

24    occasion?

9

```
 1            MS. HAYES:  He has had no contact with Dr. Bohlen,

 2       or we would suggest Dr. Sarma.  It's his current

 3       treating psychiatrist.

 4            THE COURT:  Yeah, I'm not -- I don't know that I

 5       would want that.  Philip Pan, have either of you heard

 6       of Philip Pan?

 7            MS. HAYES:  I have, Your Honor.

 8            THE COURT:  Any --

 9            MS. HAYES:  I have no objection to him.

10            THE COURT:  Any connection either of you have with

11       him?

12            MS. HAYES:  No.

13            THE COURT:  Any objection?

14            MR. GAB:  I don't have any objection, Judge.

15            THE COURT:  All right, I will appoint Dr. Pan to do

16       the fitness examination.  Now, you are also requesting

17       that you -- that he be examined as to sanity issues?

18            MS. HAYES:  His capacity at the time that these

19       crimes were allegedly committed, yes.

20            THE COURT:  I think that's a different issue than

21       fitness.  And with respect to the time the crime was

22       committed, we are here on a probation revocation, so I

23       don't know --  I don't know where we are going.  Can you

24       tell me in the '04 case where you're headed with that?
```

1    We are not going to go back and revisit that issue.  He

2    has pled guilty.

3        MS. HAYES:  That's correct, Your Honor.  What we

4    are saying is that as to the '05 case, he lacked the

5    sufficient mental capacity at the time the crimes were

6    committed to form the mental prerequisite for the crime.

7        THE COURT:  Are you going to do an order?

8        MS. HAYES:  Yes.

9        THE COURT:  And make arrangements for the

10   examination by Dr. Pan?

11       MS. HAYES:  Okay.

12       THE COURT:  You need to get that order over to me

13   as soon as you can because I will be leaving here next

14   Thursday.  So you want to make sure you get that over to

15   me before then.  I had something in mind here.  You have

16   those orders -- or Brian Otwell, our Public Defender, is

17   here.  You have the orders for those exams?

18       MS. HAYES:  We --

19       MR. OTWELL:  We certainly have the fitness order,

20   Your Honor.  Normally -- when we retain somebody for

21   criminal responsibility, that's on a consultation basis,

22   so normally --

23       THE COURT:  Yeah, I'm not sure, Miss Hayes.  Miss

24   Hayes?

11

1              MS. HAYES:  Yes.

2              THE COURT:  I'm not sure you want to be doing that

3     other exam together with this fitness exam because

4     normally, if you're raising issues concerning the

5     ability to form the intent, you would want to have a

6     consultation which just you get to see.  This fitness

7     exam, the results of that are going to be seen by

8     everybody and made a part of the record.  The other one,

9     the other exam is something that's confidential to you

10    unless you decide you're going to move ahead with it.

11             MS. HAYES:  I understand.

12             THE COURT:  So I think you ought to be asking --

13    well --

14             MS. HAYES:  We are asking for the fitness at this

15    time.

16             THE COURT:  We will do the fitness exam at this

17    time in both the '05 case and the '04 case.

18             All right, is there anything -- and we will

19    continue this generally.  Let me see, October 11th --

20    well continue this generally to October 11th at 9:00

21    a.m. just for status to see where we are.

22             MR. GAB:  Judge, in regards to the 05-CF-1143, it's

23    currently set for first appearance September 28th of

24    '05.  There has not been a preliminary hearing date set

                                12

1    for that.  It seems now we moved it from 648 into 1143.

2    Shall we proceed as normal in that matter or --

3        THE COURT:  In the '05 case?

4        MR. GAB:  Yes.  It appears you're ordering a

5    fitness examination in the '05.  However, there hasn't

6    either been a first appearance --

7        THE COURT:  Why don't we do a first appearance at

8    this time.

9        MR. GAB:  Do you think the fitness is appropriate

10   prior to the finding of probable cause at the

11   preliminary hearing?

12       THE COURT:  Yes, we do that routinely.

13       MR. GAB:  I did not bring up the '05 file.

14       THE COURT:  Just have mine.  Do you want to do the

15   first appearance out of the complaints we have, or do we

16   need the file?  Do you have a copy for the Defendant?

17       MR. GAB:  Can I make a copy real quick?  Do you

18   have it?  Oh, I'm sorry, Judge, the Clerk handed the

19   file to him.

20       THE COURT:  This is in 05-CF-1143.  We are going to

21   proceed to a first appearance.  Mr. Glisson is present

22   with Patricia Hayes.  Mr. Glisson, here are the copies

23   of the new charges.  Three charges have been filed

24   against you in this case, Mr. Glisson, charging in Count

1    1, Aggravated Battery to a Police Officer.  Also the

2    same charge in Count 2, and Count 3 you're charged with

3    -- with Theft.

4         The Aggravated Battery in Count 1 alleges that

5    on or about August 26th, that you, in committing a

6    battery, in violation of our criminal code, without

7    legal justification, caused bodily harm to Officer

8    Alicea in that you pushed Officer Alicea into a wall,

9    knowing that person to be a peace officer engaged in the

10   performance of her duties.  Do you understand that

11   charge?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  Now, the second count is Aggravated

14   Battery to a Peace Officer.

15        MR. GAB:  Judge, I'm sorry to interrupt, but I

16   noticed a typo.  Officer Alicea is actually a him.  If I

17   could amend by interlineation, the language that refers

18   to officer Alicia as a her.  Thank you, Your Honor.

19        THE COURT:  His duties, huh?  That will be amended.

20        Count 2 has to do, on the same date,

21   presumably same time and place, that you, in committing

22   a battery, in violation of the Criminal Code, without

23   legal justification, made contact of an insulting or

24   provoking nature with Officer D. Weiss, in that you spit

1    on Officer Weiss, knowing him to be a peace officer

2    engaged in the performance of his duties.

3              Count 3 alleges Theft.  This charge alleges

4    that on August 26th, 2005, that you knowingly exerted

5    unauthorized control over property of Kristopher Skaggs,

6    being laser cut keys, having a total value less than

7    $3,000, intending to deprive Officer Skaggs permanently

8    of the use of the property.

9              The first two charges are each Class 3

10   felonies.  If convicted of either of those, you face two

11   to five years in the Department of Corrections, a year's

12   supervised release and a $25,000 fine.  The third count,

13   the Theft count, is a Class A Misdemeanor.  You can be

14   jailed or fined up to $2,500 on that.  On all three of

15   these cases you are eligible to be considered for

16   probation, periodic imprisonment or conditional

17   discharge.  Do you understand the penalties you face on

18   all of these?

19        THE DEFENDANT:  Yes, Your Honor.

20        THE COURT:  We need to put this on a preliminary

21   hearing date.  Brian, do you have any idea how far out

22   we are?

23        MR. OTWELL:  9/29 is the first available date.

24        THE COURT:  Do you have a preference as to what

15

1    time, 1:30 or 9 o'clock?

2         MS. HAYES:  What date?

3         THE COURT:  9/29.

4         MS. HAYES:  1:30.

5         THE COURT:  All right, the -- it will be continued

6    over for preliminary hearing, 9/29 at 1:30.  You should

7    put on this, a fitness examination has been ordered, and

8    that is set for status currently on October 11th at 9:00

9    a.m. before Judge Eggers.

10         What's the State's request on bail in the new

11   felony case?

12        MR. GAB:  Judge, the Defendant has already bonded

13   out in regard to that case.

14        THE COURT:  On the new felony case?

15        MR. GAB:  That's correct, Your Honor.

16        THE COURT:  All right.

17        MR. GAB:  I'm sorry, I missed that time.

18        THE COURT:  October 29th at 1:30 -- I'm sorry,

19   September 29th.  And on the '04 case, we will see you

20   back here October 11th.

21         I should tell you, Miss Hayes, that I don't

22   think that I'm going to permit you to represent the

23   Defendant in the '04 case.  This new case is a different

24   matter.

16

1          MS. HAYES:  All right.

2          THE COURT:  And I will admonish you, Mr. Glisson,

3     that given the history that you've had with Miss Hayes,

4     you've been married, you've had your squabbles, good

5     times and bad.  I'm not sure that this is the lawyer you

6     need to have representing you in these cases, but that's

7     a decision that you need to make.  I'm concerned about

8     it.  On the old case, where she was the person whose

9     check -- whose name you apparently signed on the check,

10    I don't think that I'm going to permit you to represent

11    -- be represented by her on that case, but we will take

12    that up at a further hearing, and we may be able to get

13    over that hurdle if Mr. Costello enters his appearance

14    for you in that matter.

15         THE DEFENDANT:  Yes, sir, okay.

16         MS. HAYES:  Your Honor, can we take up the motions

17    that I filed regarding the attorney-client conferences?

18         THE COURT:  I don't have any idea what you're

19    speaking of.

20         MS. HAYES:  Okay.  I've been denied access to Mr.

21    Glisson in the jail, to have attorney-client

22    conferences, and due to the fact that we are going to be

23    going over medical records and mental records, I would

24    like to have unrestricted access, normal attorney-client

                            17

1      visits with him.

2            THE COURT:  What -- I don't have any idea what's

3      going on over in the jail.

4            MS. HAYES:  Well, I was informed, actually,

5      yesterday that you had advised the jail that I could not

6      have attorney-client visits with Mr. Glisson.

7            THE COURT:  I advised the jail authorities that

8      unless you were able to demonstrate that you were not

9      suspended from the practice of law, that you were not to

10     be permitted those visits.  It was my understanding that

11     you were suspended.  I, this morning, contacted the ARDC

12     and was advised that you are -- that your suspension has

13     been stayed so that you are able to practice.

14            MS. HAYES:  That's correct, yes.

15            THE COURT:  Yes.

16            MS. HAYES:  So --

17            THE COURT:  So the jail is now aware of that fact.

18            MS. HAYES:  So they will allow me to have

19     attorney-client visits?

20            THE COURT:  Unrestricted visits.

21            MS. HAYES:  I mean, normal attorney-client

22     interviews.

23            MR. GAB:  Judge, I object to hearing that motion,

24     the Court's entry of an order at this point in time.  I

18

1    haven't had an opportunity to talk to the jail about

2    what's going on and what their concerns are.  I haven't

3    had a chance to review the case law in regards to what

4    authority the jail has to restrict and not restrict

5    access.  You know, I think all of these issues are real

6    important before a Court says, Jail, you have to operate

7    in a certain manner.  Absent any discussion with the

8    jail of what their concerns are and review of what the

9    standards are in relation to what the jail is expected

10   to do in regards to attorney-client privilege, I would

11   hesitate to, you know, make any representations to the

12   Court about what an appropriate course of action is in

13   this matter.

14        THE COURT:  Well, I can enter an order, and it will

15   be on the sheet that you're taking back, indicating that

16   Miss Hayes is not suspended, and that is all that I need

17   to do.  Now, if you have further problems with what you

18   feel are your ability to have visits with your client,

19   we will deal with it -- we will deal with that down the

20   road if you run into problems with the Sheriff's Office

21   in that matter.

22        MS. HAYES:  Well, I --

23        THE COURT:  But prior to this morning, and I've

24   been out of here Wednesday and Thursday, but prior to

19

1    this morning, the last status that I had with the

2    Sheriff's Office was that it was my understanding that

3    you were suspended, and I think that as early as last

4    weekend, somebody may have advised you to get a slip of

5    paper to provide to the Sheriff's Office showing that

6    you had a stay on your suspension, and, you know, that's

7    all hearsay.

8         MS. HAYES:  That never occurred.  So, you know, I

9    have not been suspended as -- I'm not suspended

10   currently, and as of yesterday, I was still being denied

11   access to Mr. -- having attorney-client conversations

12   with Mr. Glisson, and since we are approaching the

13   weekend, I would like to make sure that that does not

14   occur so I can meet with him to get releases signed for

15   medical records and to review medical records.

16        THE COURT:  Well, all that I can do is this.  The

17   Sheriff's Office asked me sometime this week as to what

18   your status was, and I've told you what I told them,

19   that I thought you were suspended and to ask you for a

20   document indicating that your suspension has been

21   stayed.

22        MS. HAYES:  I've provided --

23        THE COURT:  But I now know that your suspension has

24   been stayed.  I called the Attorney Registration &

20

1     Disciplinary Commission this morning and was so advised.

2     So the Sheriff's Office is now so advised that your

3     suspension is stayed and you are an attorney and are

4     entitled to visit, have attorney-client visits with your

5     client in the jail.

6          MS. HAYES:  All right, thank you.

7          MR. GAB:  Judge, are you saying unrestricted

8     visits.

9          THE COURT:  No, I'm saying like everybody else in

10    counsel, she is an attorney and has the right to visit

11    her client under whatever rules we have.

12         MR. GAB:  And in the jail.

13         THE COURT:  In the jail.  I don't know what those

14    rules are.

15         MR. GAB:  I don't know either, Judge.

16         THE COURT:  And when we the face the problem, we

17    will deal with it if any problem develops.

18         MR. GAB:  Well, Judge, you can -- all I want to

19    know is clarification.  The jail has currently required

20    Miss Hayes to visit Mr. Glisson and allowed him to

21    visit, on, I believe an unrestricted basis in this

22    manner where she does not have -- she was not in the

23    same conference room with him in an unrestricted manner.

24    She visits him between glass.

1        MS. HAYES:  But no other attorney has to do that.

2        MR. GAB:  I believe that's what Miss Hayes is

3    complaining of, and if the Court's order is that they

4    can no longer do that, I want to be aware of that being

5    the Court's order so I can advise them about potential

6    conflicts with a Rule to Show Cause in this matter.  If

7    that's not the Court's order and they can make decisions

8    based upon their own, you know, policies regarding when

9    they restrict attorney access and when they don't

10    restrict attorney access, I think that's a different

11    thing.

12        THE COURT:  Well, all that I can say is that I

13    informed the jail some day this week, when informed of

14    this issue, and it may have been, Mr. Glisson, when you

15    were in court, that we spoke about this, that I advised

16    them that it was my understanding, conversations with

17    other Judges that were involved in this, that she was

18    suspended and that was our understanding, and we were

19    unable to confirm that, up until this morning was the

20    first time that I was able to confirm that the

21    suspension was stayed.  So that's all that I can do.

22    She is entitled to have the visits the same as any other

23    lawyer is entitled to with him.  She is not required to

24    have visits through glass if no other lawyers have to do

1      that, unless you have some reason, unless the Sheriff's

2      Office has some reason why that's going on, and we will

3      have to litigate that issue on this petition to --

4            MR. GAB:  That's why I --

5            THE COURT:  On this Petition to Stay the Mittimus.

6            MR. GAB:  That's why I asked that this motion be

7      allowed to give me an opportunity to talk to the

8      Sheriff's Department regarding the reasoning before this

9      Court enters an order.

10           THE COURT:  Well, we have had a change in the

11     status, in my mind, when I found out this morning that

12     she is licensed and is not suspended, she is entitled to

13     the privileges that all other lawyers are entitled to in

14     Sangamon County.  Now, if the Sheriff wishes to somehow

15     cut down on those privileges for some reason, we will

16     have to deal with those rules when we get there, whether

17     or not she and the Defendant are somehow being unfairly

18     singled out.

19           MR. GAB:  Thank you, Your Honor.

20           THE COURT:  I don't know what else to tell you.

21     So, all right, October 11th we will see you here on the

22     '04 case at least.

23           MS. HAYES:  Your Honor --

24           THE COURT:  You need to get that.  I would suggest

23

1    that you see Brian Otwell.

2        MS. HAYES:  On the order --

3        THE COURT:  And get the order for fitness, fitness

4    only.

5        MS. HAYES:  I also had a motion for Mr. Glisson to

6    be able to continue his legal -- his studies while he's

7    incarcerated.  Can we hear that?

8        THE COURT:  Can you make your argument on it?

9        MR. GAB:  I'm sorry, Judge?

10       THE COURT:  She wishes to make the argument on the

11    release.

12       MR. GAB:  Okay.

13       MS. HAYES:  Not on his release.  He's currently

14    enrolled at MacMurray College as a senior and his

15    professors have advised him that they would allow him to

16    keep his studies and do it by way of correspondence with

17    them through the jail, and he needs to be allowed to

18    have his books brought into the jail so he can do that

19    and have access to a computer.

20       MR. GAB:  Judge, there are inherent public safety

21    issues regarding the requests that Defense counsel is

22    making.  The first thing is that the jail doesn't have

23    that kind of access to computers for Defendants at the

24    jail, so that doesn't exist.  The second is that because

1    of the possibility of a hardbound book being used as a

2    weapon, the general population does not have that.  The

3    only way that he could have that kind of access under

4    the public safety rules of the jail is if he was in

5    solitary confinement.

6         MS. HAYES:  Could we have a hearing on that issue?

7         THE COURT:  Well, this is the hearing.

8         MS. HAYES:  Okay.  Well, would he be allowed to

9    have a laptop brought into him?  I mean, there's no

10   reason why he couldn't be put in a room with his books

11   to be able to study while he's incarcerated.

12        THE COURT:  On the basis of what is before me, I

13   don't have any ability to allow your motion, so I'm

14   going to deny it.

15             Any other motions you want heard?

16        MS. HAYES:  Well, we want some clarification as the

17   basis that he's being held, if he's being held on the

18   '04 warrant or if this is on a new warrant.

19        THE COURT:  He's being held on the '04 warrant is

20   my understanding.  He bonded out on the '05 case.

21        MR. GAB:  That's my understanding as well, Judge.

22        MS. HAYES:  Okay, all right.  So this is $50,000 on

23   the mittimus?

24        THE COURT:  I don't think I allowed any bond.

25

1          MR. GAB:  I believe it was 50,000.

2          THE COURT:  Was it 50?

3          MR. GAB:  Yes.

4          MS. HAYES:  Yes.

5          THE COURT:  Yes.

6          MS. HAYES:  Okay.

7          THE COURT:  All right.

8          MS. HAYES:  Thank you.

9                    (The proceedings were concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1    IN THE CIRCUIT COURT FOR THE SEVENTH JUDICIAL CIRCUIT

2    SANGAMON COUNTY, ILLINOIS

3

4

5            I, Andrea S. Pryor, an Official Court Reporter

6    for the Circuit Court of Sangamon County, Seventh

7    Judicial Circuit of Illinois, do hereby certify that I

8    reported in shorthand the proceedings had on the hearing

9    in the above-entitled cause; that I thereafter caused

10    the foregoing to be transcribed into typewriting, which

11    I hereby certify to be a true and accurate transcript of

12    the proceedings had before Robert J. Eggers, Judge of

13    said Court.

14

15    _____

16    Official Court Reporter

17

18

19

20

21

22

23    Dated this 13th day

24    of September, 2004.

27

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT

SANGAMON COUNTY, ILLINOIS

PEOPLE OF THE         )
STATE OF ILLINOIS,    )
                    )
        Plaintiff,   )
                    )    CRIMINAL DIVISION
     vs.            )
                    )    NOS. 2004-CF-648 and
                    )    2005-CF-1143
SCOTT GLISSON,        )
                    )
        Defendant.   )

HEARING

REPORT OF PROCEEDINGS of the hearing held

before the Honorable ROBERT J. EGGERS, on the 12th day

of September, 2005.

APPEARANCES:

        HONORABLE JOHN SCHMIDT,
          State's Attorney of Sangamon County by
        MR. DWAYNE GAB,
          Assistant State's Attorney
          for the People of the State of Illinois.

        MS. PATRICIA HAYES,
          Attorney at Law
          on behalf of the Defendant.

Andrea S. Pryor, CSR
Official Court Reporter
Room 732 - Sangamon County Complex
Springfield, IL  62701
(217) 753-6390
Lic. No. 084-002387

1

<u>I N D E X</u>

<u>WITNESSES</u>                                          <u>PAGE</u>

None

<u>EXHIBITS</u>                    <u>ADMITTED</u>

None

1          THE COURT:  This is in 04-CF-648 and 05-CF-1143,

2     People v. Scott Glisson, who is not here for this

3     hearing, but Patty Hayes is here.  Duane Gab is here for

4     the State.

5          We are scheduled when on this case?

6          MS. HAYES:  We have a preliminary hearing set for

7     September 29th, and then there is a status hearing on

8     October 11th.  We have a mental fitness exam that has

9     been ordered, and I was just on the phone with Dr. Pan,

10    and his office indicated they can't do it until January,

11    so I don't know what that's going to do to scheduling.

12         THE COURT:  Well, we can take that issue up after

13    we are done with this issue.

14         This issue that I wanted to talk about was

15    seeing what we are going to do with this Petition for

16    Rule to Show Cause and Motion to Dismiss that has been

17    filed in.

18         MR. GAB:  Well, you know, Judge, I think we still

19    have a pending motion by the State regarding Miss Hayes'

20    ability to even represent Mr. Glisson in regards to this

21    matter, and I know that Miss Hayes made a representation

22    to the Court on Friday that Michael Costello was going

23    to become involved in this case.

24         THE COURT:  Weren't we going to do that on Tuesday?

3

1          MS. HAYES:  I don't believe we have that date set.

2     I believe we were supposed to get together and get a

3     hearing date, and I have not seen a motion filed by the

4     State concerning -- have you filed a motion?

5          MR. GAB:  No, I haven't.

6          MS. HAYES:  I have not seen a motion filed by the

7     State concerning my ability to represent Mr. Glisson.

8          MR. GAB:  I made an oral motion before the Court at

9     the hearing, Judge.

10         MS. HAYES:  I did not hear that motion.

11         THE COURT:  My recollection is we had it set

12    sometime this week.  The only -- I believe I thought

13    what needed to be resolved was the issue as to the

14    warrant that was issued, and the issue as to revoke a

15    stay of the mittimus in 04-CF-648.

16         MR. GAB:  Well, that's initially what we were

17    before the Court on.  During the Court hearing, Miss

18    Hayes filed -- or had filed, and I received just prior

19    to the Court hearing, a number of motions.  Based on the

20    background of this attorney and the Defendant, I thought

21    it was appropriate for the State to raise issues

22    regarding a conflict of interest that appears between

23    the attorney and the Defendant because ultimately, if a

24    conflict does exist, I think that it is raisable as a

4

1    post-conviction or an appeal issue, and I think there

2    are substantial conflict issues that exist given the

3    relationship between this attorney and the Defendant.

4    At the court hearing I did offer the Court various court

5    files that show a rather contentious relationship which,

6    it is the State's Attorney's Office opinion, makes it

7    very difficult for, you know, us to think that she can

8    represent him.  Now, that's fine.  If he wants to waive,

9    if the Court doesn't feel it's a conflict that's not

10   waivable, then I've --

11         THE COURT:  I thought I had given you each my

12   thinking on this, on the probation case, the probation

13   revocation case on which he is sitting on a mittimus.  I

14   think I indicated that I had problems with Miss Hayes

15   representing the Defendant on those cases.  On the new

16   cases, however, I think I was taking a different view,

17   but you indicated that you had Mr. Costello who was

18   going to be entering his appearance on these matters,

19   and that would take care of all of this.

20         MS. HAYES:  He's going to be entering as

21   co-counsel.

22         THE COURT:  When I look at this, the motion that

23   you filed, Petition for Rule to Show Cause and Motion to

24   Dismiss, all that I see on this is the attack on the

5

1    probation case.

2        MR. GAB:  And I'm saying she is still representing

3    Mr. Glisson in regards to --

4        THE COURT:  Well, I haven't entered an order saying

5    that she can't.  So you're still saying that she doesn't

6    have the right to file that petition?

7        MS. HAYES:  It's on both cases, Your Honor.

8        THE COURT:  Yeah, but everything in the body of

9    that case has to do with the -- with the probation case.

10   It's the probation case that is of the only concern I

11   have with respect to procedural matters.  When are we

12   going to have a hearing on that?  When was his mittimus

13   -- how long was his mittimus stayed to?

14       MS. HAYES:  It was September 20th.

15       THE COURT:  So he has got eight more days, and I

16   thought you had indicated, maybe I'm wrong on this, but

17   I thought you had indicated that wasn't an issue for

18   you.

19       MS. HAYES:  It wasn't going to be an issue on

20   revocation of the mittimus because he already had been

21   in jail, and he wants to go ahead and serve the 180 days

22   on that.

23       THE COURT:  That leaves us then to the issue in

24   this petition having to do with the failure of the

6

1    Sheriff's Office to allow counsel, and that will be on

2    the new case.  So the standing issue, as far as I'm

3    concerned, is resolved.

4         MS. HAYES:  Okay, so are you the Judge on the new

5    case?

6         THE COURT:  I don't know that we have a Judge on

7    the new case.  That Judge on the new case won't be

8    assigned until a preliminary hearing, but I, for

9    purposes of this, will make myself available for hearing

10   on this.  So when is it going to be convenient for you

11   to have your witnesses here?

12        MR. GAB:  Well, Judge, I believe that there are

13   substantial issues regarding standing and jurisdiction.

14   I think when we filed the Rule to Show Cause that there

15   are particular service issues that haven't been

16   accomplished.  I don't -- you know, factually, having a

17   hearing with regard to the facts of the case, you know,

18   I've had this now for seven minutes.  I've talked to the

19   jail.  Oh, she gave it to Jake Kelley a half hour ago.

20        MS. HAYES:  I gave it to the State's Attorney's

21   Office at 8:30, and no one has been able to find

22   Mr. Gab.

23        THE COURT:  I told you, Counsel, that he was in

24   court in front of me at some point, whether it was in 7B

7

1    or 5A this morning.  It has been a hectic morning, and

2    at some point when you weren't there, Mr. Gab was there.

3    What I'm trying to find out from you is when is it

4    you're going to be able to --

5        MR. GAB:  I understand, Judge.  Factually, I have

6    not had a chance to talk to the jail regarding who my

7    witnesses are to the reasoning behind the jail's

8    restrictions.  I think that I have to research the issue

9    of whether or not there has been appropriate service in

10    this matter, whether or not this Court has jurisdiction

11    to order the jail to do anything besides hold the person

12    in custody.  So I think that I at least should have

13    three days to respond to this.

14        MS. HAYES:  Well --

15        MR. GAB:  Judge, she is getting visits.

16        MS. HAYES:  I'm not getting visits.

17        THE COURT:  I don't want to argue about that.  This

18    is just a scheduling.  I'll give you your three days to

19    respond, and can we have a hearing on it next week then?

20        MS. HAYES:  Next week.  So I won't have contact

21    with him for over a week.  I've got releases I need to

22    have, medical HIPAA releases I need to explain to him

23    and have him sign in order for me to get his mental

24    health records, which are at issue in this case, and I

8

1    can't do that without having access to him, sit down and

2    explain that.

3        MR. GAB:  When are you -- I don't believe -- I've

4    got to tell you, I've got to believe -- my

5    understanding, and I haven't talked to the jail in

6    substantial format, I think she has visits where all

7    that's happening is she is talking to her client between

8    the glass.  I mean, I think she can pass information.

9        MS. HAYES:  No, I can't pass information to him,

10   and I can't explain the contents of the releases.  And

11   it's not confidential.  Everyone walks by.  You can hear

12   everything.  It's not a confidential attorney-client

13   communication.

14       THE COURT:  Well, Mr. Costello may be of great

15   benefit to you on that issue.

16           But when are we going to be able to set it for

17   hearing?

18       MR. GAB:  Judge, like I said, three days, whenever

19   the Court -- I think that there are substantial legal

20   issues.  You know, I think you've got to serve him.

21       MS. HAYES:  We can file a 42-1983 action, and if I

22   get a separate TRO, if that's what you want me to do, I

23   mean, it's a Fifth Amendment right to counsel issue.

24       MR. GAB:  Absolutely.  You can file whatever,

9

1    wherever you want to, and I'll ask for a time to respond

2    and in an appropriate manner.  I think that what we have

3    is do we have a Rule to Show Cause that has been filed?

4         THE COURT:  A petition.

5         MS. HAYES:  It was based upon an order entered by

6    this Court on Friday, though.

7         THE COURT:  Yeah, and the -- well, so you're going

8    to be available for a hearing next week?

9         MR. GAB:  Like I said, Judge, give me three days to

10   respond, Thursday, Friday.

11        THE COURT:  I'm out of here Thursday, Friday and

12   Monday, and what trial do we have the following week?

13   September 22 at 1:30, how does that sound?

14        MR. GAB:  Okay.

15        THE COURT:  I should warn you that I have a trial

16   that's going that week, and if the jury trial is

17   underway, I won't be able to do it, but that's the

18   earliest I can get you in.

19                     (The proceedings were concluded.)

20

21

22

23

24

                              10

IN THE CIRCUIT COURT FOR THE SEVENTH JUDICIAL CIRCUIT

SANGAMON COUNTY, ILLINOIS

I, Andrea S. Pryor, an Official Court Reporter for the Circuit Court of Sangamon County, Seventh Judicial Circuit of Illinois, do hereby certify that I reported in shorthand the proceedings had on the hearing in the above-entitled cause; that I thereafter caused the foregoing to be transcribed into typewriting, which I hereby certify to be a true and accurate transcript of the proceedings had before Robert J. Eggers, Judge of said Court.

_____

Official Court Reporter

Dated this 28th day

of October, 2005.

11

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT

SANGAMON COUNTY, ILLINOIS

PEOPLE OF THE            )
STATE OF ILLINOIS,       )
                         )
          Plaintiff,     )
                         )     CRIMINAL DIVISION
     vs.                 )
                         )       NOS. 2004-CF-648 and
                         )       2005-CF-1143
SCOTT GLISSON,           )
                         )
          Defendant.     )

ARGUMENT and JUDGE'S RULING

REPORT OF EXCERPTS OF PROCEEDINGS of the

hearing held before the Honorable ROBERT J. EGGERS, on

the 22nd day of September, 2005.

APPEARANCES:

          HONORABLE JOHN SCHMIDT,
             State's Attorney of Sangamon County by
          MR. DUANE GAB,
             Assistant State's Attorney
             for the People of the State of Illinois.

          MS. PATRICIA HAYES,
             Attorney at Law
             on behalf of the Defendant.

Andrea S. Pryor, CSR
Official Court Reporter
Room 732 - Sangamon County Complex
Springfield, IL  62701
(217) 753-6390
Lic. No. 084-002387

I N D E X

WITNESSES                                          PAGE

None

EXHIBITS                        ADMITTED

None

1                          * * * * * * * * * *

2          THE COURT:  Very well.  I'll listen to your

3     argument.

4              MS. HAYES:  Your Honor, clearly --

5          THE COURT:  We are here on the Petition --

6              MS. HAYES:  Right, for Rule to Show Cause.  I

7     believe that the Court entered an order on September 9th

8     ordering that I be allowed access to Mr. Glisson, the

9     same as any other attorney is allowed access to, and the

10    Court said at that time if the jail has a problem with

11    it, they can bring it up, but as of that time, the jail

12    had brought no -- nothing to the Court's attention.  The

13    order of the Court as of August 9th -- or September 9th

14    was that I be treated the same as any other attorney

15    visiting any other client at the Sangamon County Jail.

16    Clearly, the evidence is that they have restricted my

17    access, and prior to today, have offered absolutely no

18    reason to either myself, Mr. Glisson or the Court that

19    could be refuted, and I believe that the jail is clearly

20    in violation of this Court's September 9th, 2005, order

21    ordering me to have access to my client.  I'd ask that

22    they be found in contempt.

23          THE COURT:  Well, if allow the petition, I'll enter

24    a Rule, and they will be required to answer.  But what

                                 3

1    do you have to say, Mr. Gab?

2         MR. GAB:  Judge, going back to my Motion to Strike,

3    I would similarly say that once again, if we look at the

4    redacted portions of the transcript, and I would ask the

5    Court to take judicial notice of the transcript, I

6    guess.  It is what happened, and I believe those are the

7    Court's statements in this regard, and I believe the

8    jail is correct when they interpreted your order to say

9    that they should treat her like an attorney of record.

10   When you break that down, all you're telling the jail is

11   she is the attorney of record.  You're not saying you

12   have to treat her in any manner.  You know, at the end

13   you say, if this becomes an issue, we will have to

14   appear on a petition to -- you don't conclude that, but

15   I assume it would be another petition.  Therefore, I

16   don't see how the jail is in any kind of contemptuous

17   position in regards to this Court's order.

18        THE COURT:  All right.  The request for a Rule to

19   Show Cause will be denied.  Not included in the

20   discussion today, as I remember the events of that week,

21   was the 9th a Friday?

22        MR. GAB:  Yes, Judge.

23        MS. HAYES:  Yes, Judge

24        THE COURT:  The 9th was a Friday.  I was aware -- I

4

1    think I indicated on the record for that hearing that

2    there was some issue that week that was ongoing, whether

3    Miss Hayes' license had been suspended or not, and I

4    think that I indicated I was aware that issue was

5    ongoing here, that I had called over to the ARDC that

6    morning and found out that there was an Order of

7    Suspension entered but that it was stayed.  It is my

8    recollection that somebody informed Miss Hayes that she

9    was to show the jail a copy of the stay of her

10   suspension.  Those were the issues, as I recollect going

11   to the hearing on the 9th that were in existence.  The

12   question was, as I recollect, whether or not Miss Hayes'

13   license -- whether in fact she was able to practice as a

14   lawyer at all going into that hearing.  At that hearing

15   I indicated that and I informed the Sheriff's Office

16   that my call to ARDC indicated that a stay was entered.

17   I informed them of that.  Then we had a question over

18   what were the conditions going to be a with visitation,

19   and I said that she was entitled to the same visitation

20   as any other lawyer would be entitled to, and -- but

21   that didn't mean that the jail wasn't able to do the job

22   that the jail has to do, and if they feel that

23   restrictions are -- appropriate restrictions are

24   appropriate, that's their call.  That wasn't mine.  So

5

1    that was the issue that we faced on the 9th.

2        Apparently, before that time or subsequent to

3    that time, I'm not sure when it was, you have ended up

4    on the restriction list, and you're on that list due to

5    arguing with your client.  I do recollect at the hearing

6    on the 9th, if not last week, that there were four or

7    five OP petitions that were presented to the Court that

8    I was asked to take notice of, sort of in support of the

9    Sheriff's position that this restriction -- or that this

10   visitation ought to be restricted, especially since

11   those petitions were filed, and we had these visitations

12   that they had permitted with argument.  So when I look

13   at this, it seems to me where we are at right now is it

14   is your yelling and screaming that has put you on this

15   list, and they need to maintain order and decorum and

16   safety and all of that other stuff over there at the

17   jail, and I just -- I can't find that they are in

18   violation of the orders that I entered on the 29th.  So

19   for those reasons, the petition will be denied -- or the

20   request for the Rule will be denied.

21       Now, we have -- you're going to have to decide

22   whether you're going to enter your appearance in that

23   case.  As to the request for the injunction, you haven't

24   entered your appearance in that matter.

6

1          MR. GAB:  It's under the criminal felony case, so

2     the People of the State of Illinois are present.

3          THE COURT:  Okay, you're asking me to dismiss that

4     and require Mr. Glisson to file an injunction petition

5     in State court?

6          MR. GAB:  That, I believe, is the appropriate

7     remedy.  I don't know if there's a conflict of laws

8     based upon the filing, and this is filed in Federal

9     District Court, and I'm not sure if you can have

10    contemporaneous complaints or not.  I'm certainly not

11    prepared to talk about conflict of law at this time.

12         THE COURT:  Well, I wouldn't expect that you would

13    be able to.  I don't have any feel about it either.

14         MR. GAB:  I don't believe it's appropriate in a

15    criminal felony proceeding to be doing this, Judge.

16         THE COURT:  So you're asking that the Court dismiss

17    that Petition for Injunction and have the -- have

18    Mr. Glisson serve all of the parties that he wishes to

19    be brought into that injunction case?

20         MR. GAB:  Well, I'm not asking for the Court to

21    make an order regarding the U.S. District Federal case.

22    No, no, I'm not talking about that.  I'm talking about

23    the injunction petition that Miss Hayes has filed,

24    attempted to file in this felony case.  I'm asking that

1    it be dismissed, Judge.

2        THE COURT:  All right, I'll dismiss it.  I don't

3    think this is the appropriate place for that injunction

4    petition to be filed.  I will continue to monitor this

5    Sixth Amendment issue with respect to Mr. Glisson being

6    in our jail.  I have an opportunity to make sure -- I

7    have an obligation, I think, to make sure that he has

8    adequate opportunity to consult with his lawyer about

9    his case, and I haven't heard anything that would

10   convince me otherwise at this point.

11       MR. GAB:  Thank you, Judge.

12       THE COURT:  All right.  That will be the order of

13   the Court.

14       MR. GAB:  Judge, and I apologize for doing this,

15   but there's -- I'm not clear about one issue, and it's

16   in regards to the mittimus that Mr. Glisson is currently

17   on.  That was stayed until the 20th.  He was picked up

18   on my Petition to Revoke the Mittimus and his bond on

19   the mittimus, which was an OR bond, currently there's a

20   $50,000 bond out there and there's also a mittimus.

21       THE COURT:  Have we gotten to the mittimus date?

22       MR. GAB:  We have already gotten to the mittimus

23   date.  Mr. Glisson has been in custody since the time

24   before that, and I believe you get credit for that time.

8

1    I don't know if -- I'm very confused whether Miss Hayes

2    represents him in that case or not.  But what I would

3    represent to the Court, I think that it is appropriate

4    that I withdraw my Petition to Revoke his Bond pending

5    his mittimus.

6         THE COURT:  He's serving the mittimus.

7         MR. GAB:  Right, because he's serving the mittimus,

8    he doesn't need to be on bond on the mittimus and be

9    given credit for time served since he was picked up on

10   that bond on the sentence of 180 days --

11        THE COURT:  I thought --

12        MR. GAB:  -- previously entered.

13        THE COURT:  I'm sorry to interrupt you.  I thought

14   we resolved that at the last hearing.  He was in there

15   on that, the second time on that, and that was --

16        MS. HAYES:  That was at one of our conferences,

17   yes, it was.  There is an issue regarding seven days

18   that Mr. Glisson served in Colorado when he was picked

19   up on a warrant out there and served seven days on an

20   extradition warrant.  He should be granted credit for

21   that ten days also.

22        MR. GAB:  Well, I don't know, Judge.  Mr. Harmon

23   represented him at the Petition to Revoke, and that

24   wasn't what was done at that point in time.  I don't

9

1    really recollect what -- was there credit for time

2    served in that mittimus?  I don't recollect.

3        MS. HAYES:  There was credit for time served in

4    that, but he was not credited for the seven days that he

5    served while he was incarcerated on a warrant in this

6    case, and that was in Colorado, from July 20th through

7    July 27th.

8        MR. GAB:  Of what year?

9        MS. HAYES:  This year.

10        THE COURT:  Did you waive extradition, Scott?

11        THE DEFENDANT:  I waived extradition, and they

12    released me, and I flew back home, turned myself in, and

13    that's where the three days that you gave me time served

14    for, because I was waiting on the $1,300 to bond out.

15    My father bonded me out.  That's only three days that's

16    on that piece of paper.

17        THE COURT:  But you were in custody in Colorado for

18    seven days?

19        THE DEFENDANT:  Eight days, from July 20th to July

20    28th, El Paso County, Colorado Springs, Your Honor, on

21    this warrant, on this '04 case, to revoke my probation.

22        MR. GAB:  Judge, I believe he gets credit for all

23    time incarcerated, that the maximum sentence that he can

24    be sentenced for on probation is 180 days.  I was not

10

1     made aware of that at the sentencing hearing.

2          THE COURT:  That would be nine days credit if you

3     were in custody from the 20th through the 28th.  That's

4     nine days, and we have the three days here.  So that's

5     12 days, so he has 12 days.

6          MR. GAB:  Yes.

7          THE DEFENDANT:  Plus being incarcerated from

8     September 3rd to the --

9          THE COURT:  Whenever you went in here, you're

10    serving your 180 days.  So he starts off with 12 days

11    credit, Vicki.

12         MR. GAB:  And it starts from the 3rd.

13         THE COURT:  It starts from the 3rd.

14         SERGEANT THOMPSON:  And given 12 days credit.

15         THE COURT:  Since the 3rd.

16              * * * * * * * * * *

17

18

19

20

21

22

23

24

11

1          IN THE CIRCUIT COURT FOR THE SEVENTH JUDICIAL CIRCUIT

2                    SANGAMON COUNTY, ILLINOIS

3

4

5          I, Andrea S. Pryor, an Official Court Reporter

6     for the Circuit Court of Sangamon County, Seventh

7     Judicial Circuit of Illinois, do hereby certify that I

8     reported in shorthand the proceedings had on the hearing

9     in the above-entitled cause; that I thereafter caused

10    the foregoing to be transcribed into typewriting, which

11    I hereby certify to be a true and accurate transcript of

12    the proceedings had before Robert J. Eggers, Judge of

13    said Court.

14

15                    _____
                            Official Court Reporter
16

17

18

19

20

21

22

23    Dated this 28th day

24    of October, 2005.


                              12